UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

GLOBALFOUNDRIES U.S. INC.,

               Plaintiff,

      - against -

INTERNATIONAL BUSINESS MACHINES
CORPORATION,

            Defendant.

7:23-cv-3348-KMK-AEK

**DEFENDANT IBM'S MEMORANDUM OF LAW IN OPPOSITION TO
PLAINTIFF'S MOTION FOR EXPEDITED DISCOVERY**

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................ 1

FACTUAL BACKGROUND ................................................................................................... 4

ARGUMENT .......................................................................................................................... 13

GF'S MOTION FOR EXPEDITED DISCOVERY SHOULD BE DENIED ............................ 13

    A.    GF Cannot Establish Irreparable Injury .................................................................. 14

        1.    GF's Claim of Irreparable Harm Is Contradicted by Its Unreasonably Long Delay in Sitting on Its Hands for More Than Two Years ............................................................................................... 14

        2.    Irreparable Harm Is Not "Presumed" on GF's Claims ............................ 16

    B.    GF Has Not Shown Any Probability of Success on the Merits ............................. 20

    C.    GF's Proposed Expedited Discovery Is Not Connected to the Avoidance of Irreparable Injury ................................................................................................ 20

    D.    GF's Proposed Expedited Discovery Will Prejudice IBM ................................... 21

CONCLUSION ....................................................................................................................... 25

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Advanced Portfolio Technologies, Inc.* v. *Advanced Portfolio Technologies Ltd.*,
    1994 WL 719696 (S.D.N.Y. Dec. 28, 1994) ..........................................................................19

*Andersen Consulting LLP* v. *Am. Mgmt. Sys., Inc.*,
    1995 WL 510042 (S.D.N.Y. Aug. 28, 1995) ....................................................................13, 15

*Ayyash* v. *Bank Al-Madina et.al.*,
    233 F.R.D. 325, 327 (S.D.N.Y. 2005) ...........................................................................19, 20

*Citigroup Inc.* v. *AT&T Inc.*,
    2016 WL 8794472 (S.D.N.Y. July 1, 2016) ....................................................................13, 21

*Delphine Software* v. *Elecronic Arts*,
    1999 WL 627413 (S.D.N.Y. Aug. 18, 1999) .........................................................................20

*Doe 1* v. *Congregation of the Sacred Hearts of Jesus & Mary*,
    2022 WL 2901403 (S.D.N.Y. July 22, 2022) ..................................................................21, 22

*United States* v. *Erie County*,
    2010 WL 11578742 (W.D.N.Y. March 6, 2010) .............................................................23, 24

*Estee Lauder Companies Inc.* v. *Batra*,
    430 F. Supp. 2d 158 (S.D.N.Y. 2006) .............................................................................16, 17

*ExamWorks* v. *Todd Baldini*,
    2020 WL 3127928 (E.D. Cal. June 11, 2020), *vacated in part on other*
    *grounds*, 835 Fed. App'x 251 (9th Cir. 2020) ......................................................................18

*Gidatex, S.r.L.* v. *Campiniello Imps., Ltd.*,
    13 F. Supp. 2d 417 (S.D.N.Y. 1998) ....................................................................................15

*Helio Logistics* v. *Mehta*,
    2023 WL 1517687 (S.D.N.Y. Feb. 3, 2023) ...........................................................15, 16, 20

*Jones* v. *United States Postal Service*,
    2020 WL 5525748 (S.D.N.Y. Sept. 15, 2020) .......................................................................22

*Next Communications, Inc.* v. *Viber Media, Inc.*,
    2016 WL 1275659 (S.D.N.Y March 30, 2016) .....................................................................18

*OMG Fidelity* v. *Sirius*,
    239 F.R.D. 300 (N.D.N.Y. 2006) ..........................................................................................23

*Renaissance Nutrition, Inc.* v. *Jarrett*,
   2009 WL 1475902 (W.D.N.Y. May 27, 2009) .......................................................................22

*Salinger* v. *Colting*,
   607 F.3d 68 (2d Cir. 2010) ...................................................................................................17

*Shenzen Chengront Tech. Co., Ltd.* v. *Besign Direct*,
   2022 WL 17741496 (S.D.N.Y. Dec. 9, 2022) .........................................................13, 14, 15

*SingularDTV GMBH* v. *LeBeau*,
   2022 WL 1082557 (S.D.N.Y. Apr. 6, 2022)...........................................................................13

*SingularDTV, GmbH* v. *Doe*,
   2022 WL 16852213 (S.D.N.Y. Oct. 26, 2022) ......................................................................23

*Sun Distributing Company* v. *Corbett*,
   2018 WL 4951966 (S.D. Cal. Oct. 12, 2018) ..................................................................17, 18

*Waymo* v. *Uber Technologies*,
   No. 17 cv 00939, ECF Nos. 24, 26 (N.D. Cal. Mar. 10, 2017) ........................................16, 20

*Waymo* v. *Uber Technologies*,
   No. 17 cv 00939, ECF No. 61 (N.D. Cal. Mar. 16, 2017).....................................................22

*Wealth Mgmt. Assocs. LLC* v. *Farrad*,
   2019 WL 5725044 (S.D.N.Y. June 21, 2019) .......................................................................17

Defendant International Business Machines Corporation ("IBM") submits this Memorandum of Law in Opposition to the Motion for Expedited Discovery submitted by Plaintiff GlobalFoundries U.S. Inc. ("GF") (ECF No. 19).

## PRELIMINARY STATEMENT

GF's motion for expedited discovery should be denied because there is no emergency and no risk of irreparable harm. As stated in its complaint, GF learned of IBM's alleged "unlawful plot" to disclose GF's trade secrets in March 2021 when IBM "first revealed [it] would be unlawfully disclosing GF IP." According to GF, in 2021 IBM launched a "knowing campaign to *publicly disclose* GF IP" (GF's own emphasis).

Thus, according to GF's own allegations, this dispute arose more than two years ago. In fact, in October 2021, GF sent IBM a notice of dispute. As alleged by GF itself, GF's claim was then, as it is now, that IBM entered into partnerships with other semiconductor companies - - Intel and Rapidus - - to develop technology for what are called 2 nanometer (or 2nm) computer chips. GF claims, without any basis, that it controls the trade secrets being used to make those chips.

GF presented this precise claim to IBM in 2021 after IBM announced its partnership with Intel in March 2021. GF waited seven months after learning of the Intel partnership before sending IBM a dispute notice. Then, for six more months, from October 2021 to April 2022, GF met face-to-face (by video) and exchanged letters with IBM debating the lack of factual and legal merits of GF's claims. In April 2022, over 12 months after IBM announced the Intel partnership, GF ceased discussing its claims and disappeared. It never sought a temporary restraining order. It never sought a preliminary injunction. It never sought expedited discovery. It did not even sue IBM. IBM did not hear a word from GF about this for another full year.

1

What did happen during that time is that IBM sued GF in New York state court for fraud and for breaching the very contracts GF now claims that IBM has breached.  In 2015, IBM entered into a series of contracts to form a partnership with GF to develop at least two generations of computer chips.  Based on those contracts, GF contends that it took control of some undefined trade secrets, which it now alleges IBM misappropriated.  But GF defrauded IBM and then breached those contracts when it repudiated the partnership in 2018, including refusing to participate in the development of future generations of semiconductor technology.  In 2018, GF walked away from IBM, and now claims that it owns all intellectual property associated with any work IBM performs in semiconductor development.  Since GF breached its obligations, IBM has embarked on new semiconductor development projects with other partners.

This lawsuit is GF's retaliation.  But GF cannot show, and has not shown, that it now faces impending peril or irreparable injury based on a dispute that it raised in 2021 and abandoned in early 2022.  It tries to resurrect the dispute based on IBM's partnership with Rapidus, but IBM announced that partnership last December.  Again, GF did not act with the speed of a company facing irremediable danger.  It again sat on its hands, waiting four months to say or do anything.  It did not sue.  It did not file for a temporary restraining order.  It did not move for a preliminary injunction.  It did not send a cease and desist letter.  By coincidence or not, GF waited in silence until the morning after IBM released its earnings for the first quarter 2023 on April 18, 2023:  GF leaked to the press a copy of its complaint, but filed it under seal so that IBM could not see it.

Setting aside GF's motives, IBM's announcement last December of its partnership with Rapidus did not give rise to a new dispute.  To the contrary.  According to GF, IBM's announcement about Rapidus "mirror[ed] its earlier announcement related to Intel."  Indeed it

2

did.  IBM announced that it will develop "2 nanometer (nm) node technology" with Rapidus, which is what GF alleges IBM is doing with Intel.  There is nothing new here.  If there was a new dispute, the dispute resolution provisions of the parties' contracts would have required that GF give IBM notice of that new dispute.  GF did not.  Rather, GF alleges that it is "entitled . . . to bring this suit" because it sent IBM a Dispute Notice on October 1, 2021.  In other words, this dispute is 18 months old.

After years of inaction, GF now claims there is an emergency because of a public statement made by Rapidus on April 25, 2023.  Rapidus stated that its researchers would come to the semiconductor research center run by IBM in Albany to collaborate with IBM to develop 2nm technology.  That is nothing new.  When IBM publicly announced its Rapidus partnership back in December 2022, it said the same:  "Rapidus scientists and engineers will work alongside IBM Japan and IBM researchers" in Albany to develop 2nm technology.  GF did not act with alarm then.  It has no basis to do so now.

What really is going on here is that GF wants to disrupt IBM's relationships with GF's competitors and get a quick look at what they are doing - - all before IBM moves to dismiss this case.  That is evident because, contrary to GF's claim that its proposed discovery requests are "targeted" and  "narrowly tailored," GF seeks full copies of *all* of IBM's databases containing *any* documents relating in any way to Rapidus, and full copies of *all* devices containing any such documents.  GF would not be entitled to such vast discovery even if its claims survived dismissal and moved into regular discovery.

GF fails to satisfy the requirements for expedited discovery.  Its own conduct proves that it has not been, and will not be, irreparably harmed.  Thus, GF has no basis for expedited discovery or a preliminary injunction.  Accordingly, GF's motion should be denied.

**FACTUAL BACKGROUND**

As discussed above, GF's motion papers omit the critical background of this case and the critical facts relevant to this motion. The full background is detailed in the Complaint IBM filed against GF in 2021 in New York State Supreme Court (*International Business Machines Corporation* v. *GlobalFoundries U.S. Inc.*, No. 653625/2021). Declaration of Pietro J. Signoracci dated May 8, 2021 ("Signoracci Decl.") Ex. 1 ("IBM Compl."). The facts regarding this two-year-old dispute and GF's years of unhurried conduct are set forth below.

***IBM and GF's Technology Alliance:  July 2015 to August 2018***

Both IBM's state court suit against GF and this subsequent action arise from a multi-contract transaction between IBM and GF that closed in July 2015. (*See* IBM Compl. ¶ 2; ECF 1 ("GF Compl.") ¶ 2.) The parties formed an alliance intended to be a technology development collaboration, but GF quickly repudiated the partnership and abandoned it altogether in August 2018. (*Id.* ¶ 9.)

In the 2015 transaction, IBM agreed to transfer its semiconductor manufacturing facilities, many of its semiconductor employees, and some of its technological know-how to GF. In exchange, GF contracted to become IBM's long-term sole-source supplier - - and technology-development partner for successive generations of semiconductor chips for IBM's mainframes and other servers. (*Id.* ¶ 2.) GF agreed to manufacture what were then cutting-edge 14 nanometer (nm) chips based on technology IBM developed.[1] (*Id.* ¶ 7.) GF also agreed to develop, manufacture, and supply the next-generation 10nm chips. IBM in turn agreed, among

---

[1] The features of a semiconductor chip etched into silicon wafers are microscopic and measured in nanometers (nm), which are one-billionth of a meter. The ability of chip designers to make the features smaller and smaller has enabled chips to become far more advanced and more powerful over the years. The first semiconductor chip in 1971 was 10,000nm. By 2001, 130nm chips were being developed. Today, companies are looking toward the development of chips at 1nm and beyond. *See* Signoracci Decl. Ex. 4.

other things, to contribute $1.5 billion to the venture to help enable GF to comply with its responsibilities and obligations.  (IBM Compl. ¶¶ 7–8.)

IBM and GF memorialized their collaboration in several contracts, including two at issue in this action:  the Master Transaction Agreement ("MTA") and the Albany Cooperation Agreement ("ACA").  (IBM Compl. ¶¶ 63–76, 111–123.)  Of particular relevance to this motion, the MTA and ACA both contain dispute resolution provisions.  As a "condition precedent" to filing any legal proceeding (such as this lawsuit), GF is required to provide a written Dispute Notice and engage in a 60-day dispute resolution period, during which representatives of the parties must "discuss and meet in person" to try to resolve the dispute.  *See* Signoracci Decl. Exs. 2–3.

As alleged by GF in its Complaint, GF satisfied the notice requirement with respect to this dispute by sending IBM a Dispute Notice on October 1, 2021.  (*See* GF Compl. ¶ 159.) Since the announcement of the IBM-Rapidus partnership in December 2022 did not give rise to a new dispute, GF did not send IBM a new dispute notice.

### GF Breaches Its Agreements with IBM

GF breached its contracts with IBM shortly after the July 2015 closing.  By December 2015, GF informed IBM that it would not develop or supply 10nm chips, as it was contractually obligated to.  (IBM Compl. ¶ 131.)  It promised instead to leapfrog over the 10nm chip and develop a successor chip, a 7nm chip.  While reserving all its contractual rights with respect to 10nm chips, IBM cooperated with GF in developing 7nm chips.  (*Id.* ¶¶ 147–50.)  Then, in what was becoming a consistent pattern of breaching its contracts and promises, GF declared in August 2018 that it would not finish developing 7nm chips - - and it refused to work on any subsequent generations of chips.  (*Id.* ¶¶ 161-63.)  IBM terminated the ACA in December 2018 because of GF's repeated breaches.  (*Id.* ¶ 172.)

In June 2021, IBM sued GF for fraud and breaches of contract.  (Signoracci Decl. ¶ 2.)

GF retaliated by filing contract claims against IBM in a separate state court action, but those

claims were dismissed.  (*Id.* ¶ 5.)  GF sought to dismiss IBM's fraud claim, but GF's motion was

denied.  (*Id.* ¶ 4.)  Since then, GF twice has been ordered by the court to submit to discovery

regarding its spoliation of evidence.  (*Id.* ¶ 5.)  The extent of GF's spoliation is still under

investigation.

***IBM Proceeds Without GF and With New Partners Samsung, Intel, and Rapidus***

In the time since GF repudiated its obligations to IBM, multiple semiconductor

manufacturers have developed and launched new generations of chips, including 7nm chips, 5nm

chips, and 3nm chips.  (*See* Signoracci Decl. Exs. 5–8.)  Without any contribution by its

erstwhile collaborator GF, IBM went on to pioneer the development of technology for even

smaller and faster chips, including technology for a 2nm chip.

Implying that IBM was without the means to continue developing new chips without

GF's alleged trade secrets, GF asserts that in 2015, "IBM exited semiconductor manufacturing,

divesting its microelectronics division to GF and granting GF exclusive control over decades of

confidential, proprietary, and trade secret semiconductor manufacturing technology."  (GF Br. 2–

3.)  But while IBM divested its chip *manufacturing* operation, IBM retained its renowned Albany

Nanotech research center for pathfinding work on future generations of semiconductor chips, and

retained world-class semiconductor designers and engineers.  Thus, IBM continued to pioneer

high-performance semiconductor technology in partnership with other companies.

First, in December 2018, IBM announced that it would develop 7nm chips.  *See*

Signoracci Decl. Ex. 9.  Then, in March 2021, IBM announced a partnership with Intel to

collaborate in research for next-generation semiconductor technologies, leveraging the unique

chip innovation ecosystem of the Albany Nanotech center.  (GF Compl. ¶ 32.)  The 2nm chip

was front and center.  Intel announced in July 2021 that, after partnering with IBM, it planned to introduce a 2nm chip as early as 2024.  (*Id.* ¶¶ 33, 108.)

In May 2021, IBM announced its breakthrough in semiconductor design and process with the development of "the world's first 2nm node chip."  (Signoracci Decl. Ex. 10).  This technological achievement took place in IBM's semiconductor research lab at the Albany Nanotech Complex, "where IBM scientists work in close collaboration with public and other private sector partners."  (*Id.*)

GF also alleges that in 2021, IBM "embarked on a knowing campaign to *publicly disclose* GF IP."  (GF Compl. ¶ 37.)  The italicization is GF's, presumably to emphasize that IBM's alleged disclosure of GF's trade secrets was made for all to see.  Specifically, GF alleges that "IBM publications from 2021" were full of images "reflecting GF-Controlled Trade Secrets."  (*Id.*)

In sum, by GF's own telling of events, IBM's alleged disclosure of trade secrets was not a secret - - and it was not recent.  Over two years ago, IBM announced exactly what GF now claims requires "urgent" discovery:  IBM's purported disclosure of what GF labels "GF-Controlled Trade Secrets" and IBM's partnerships with multiple semiconductor companies to develop the technology for the next generations of chips, including 2nm chips.

### *GF Serves a Dispute Notice and Then Drops Its Trade Secret Claims*

Despite the revelation in March 2021 of IBM's alleged "unlawful plot" to disclose GF's purported trade secrets, GF said nothing for seven months.  GF took until October 2021 to send IBM a Dispute Notice, asserting that IBM's collaboration with Intel constituted a misappropriation of GF's intellectual property.  (GF Compl. ¶ 159.)

GF's Dispute Notice protested IBM's alleged use of semiconductor manufacturing process technology GF claimed to control, including in IBM's partnership with Intel, for 3nm chips and beyond.  (Signoracci Decl. ¶ 6.)

Over the next six months, until April 2022, GF and IBM representatives met face-to-face (by video) and exchanged extensive correspondence from IBM, including detailed emails and letters refuting GF's claims.  (*Id.*)  IBM explained that GF had failed to identify its purported trade secrets (a deficiency GF never remedied), and that the terms of the parties' contracts undermined GF's claims.  (*Id.*)  This dialogue did not resolve the parties' differences.  (*Id.*)  GF issued numerous "cease and desist" demands, to which IBM demurred.  (*Id.*)  GF also demanded that IBM preserve documents, and IBM did so.  (*Id.*)  It seemed like litigation was next.

But litigation never came.  The final communication came from IBM on April 4, 2022, again refuting GF's factual and legal positions.  (*Id.*)  GF never responded.  In fact, GF did nothing.  GF dropped the dispute, or so it seemed from its silence and inaction.  GF did not commence litigation, it brought no action for urgent discovery or injunctive relief, and it served no further cease and desist letters.  That was over 12 months ago.

***IBM Announces Its Partnership with Rapidus, and GF Again Does Nothing***

In December 2022, IBM publicly announced its partnership with Rapidus, a semiconductor manufacturer headquartered in Tokyo that was established in August 2022 with the support of eight major Japanese companies:  Sony, Toyota, Denso, Kioxia, MUFG Bank, NEC, NTT, and SoftBank.  (Signoracci Decl. Exs. 11–12.)

As alleged in GF's complaint, the Rapidus announcement was a repeat of the Intel announcement.  In GF's own words, IBM's news release about its Rapidus partnership "mirror[ed] its earlier announcement[] related to Intel that first revealed IBM would be unlawfully disclosing GF IP."  (GF Compl. ¶ 35.)  GF alleges that, like Intel, Rapidus "will

leverage IBM's semiconductor R&D leadership, including 2 nanometer node technology." *See* Signoracci Decl. Ex. 11; *see also* GF Compl. ¶ 35.  According to GF, the Rapidus partnership parallels the Intel partnership:

- IBM is partnering with Rapidus to develop "the next generation of semiconductor technologies." (*Id.*)  Likewise, GF alleges, IBM is collaborating with Intel to advance "next-generation" semiconductor technologies.  (GF Compl. ¶ 7.)

- Specifically, "Rapidus has officially partnered with IBM for the joint development of 2 nm technology." (Signoracci Decl. Ex. 11.)  Likewise, GF alleges, "after partnering with IBM, Intel announced plans to make a 2 nm chip as early as 2024."  (GF Compl. ¶ 33.)

- To that end, GF alleges Rapidus is being provided by IBM with technology for the "2 nm node chip," including what GF labels as "GF-Controlled Trade Secrets." (*Id.* ¶ 128.)  Likewise, GF alleges, Intel is using IBM's "2 nm node chip" technology, including "GF-Controlled Trade Secrets."  (*Id.* ¶¶ 109, 107.)

In short, according to GF's own allegations, Intel and Rapidus both allegedly are using the "2 nm node chip" technology IBM announced <u>in 2021</u>.  (*Id.* ¶ 128.)  Thus, GF alleges, IBM's partnerships with Intel and Rapidus are of a piece:  "IBM's misappropriation of GF-Controlled Trade Secrets to <u>Intel, Rapidus,</u> and/or other third parties is also reflected in conference papers that were published without GF's consent <u>in 2021</u>."  (*Id.* ¶ 139) (emphasis added).

At the time of IBM's announcement of the Rapidus partnership in December 2022, GF's reaction was to do nothing:  no lawsuit, no application for a temporary restraining order (TRO), no motion for a preliminary injunction (PI) or for expedited discovery.  GF did not send a cease and desist letter.  Nor did it send a Dispute Notice or avail itself of the dispute resolution process

to remedy IBM's alleged misappropriation.  GF did not even reach out to IBM informally to register a complaint, or request a dialogue and exchange of views.  Instead, GF remained silent for four months.

**GF Finally Sues in April 2023, But Still Does Not Apply for a TRO or Move for a PI**

On April 19, 2023 - - 25 months after learning about IBM's "unlawful plot" to misappropriate GF's trade secrets, and over 12 months since it went silent after going over the same allegations with IBM during the dispute resolution process - - GF filed a complaint against IBM in a miscellaneous action under seal and released a copy of the complaint to the press days before serving it on IBM.  (Signoracci Decl. ¶ 17.)  On April 21, 2023, GF publicly filed its redacted complaint in this action, yet still did not move for injunctive or emergency relief.  It then waited three days to serve the complaint on IBM, and waited another seven days before moving for expedited discovery.  (*Id.*)

**Rapidus Announces Construction of a New Plant in Japan and Repeats IBM's Announcement from Four Months Earlier**

GF's long-belated request for "urgent" relief came after Rapidus issued a news release on April 25, 2023.  Rapidus said that the work it was doing at its new semiconductor facility would be based on its collaboration with IBM - - the same collaboration that IBM had announced back in December 2022.  Rapidus also said, as was announced in December 2022, it "started dispatching its researchers to the Albany Nanotech complex . . . and has begun research and development in collaboration with IBM."  (Signoracci Decl. Ex. 13.)

After years of desultory responses to IBM's alleged "unlawful plot" that GF alleges IBM "first revealed" in March 2021, GF now seizes on a recent statement by Rapidus as some kind of startling emergency.  But Rapidus merely recapitulated what IBM already announced in

December 2022:  "Rapidus scientists and engineers will work alongside IBM Japan and IBM researchers at the Albany NanoTech Complex" as part of "the joint development of 2 nm technology."  (*Id.*)  This is not a sudden emergency.

### *GF Files Its Motion for Massive Expedited Discovery*

On May 1, 2023, having waited over two years, GF filed its motion for expedited discovery.  GF now wants to jump out of order and take immediate, one-sided discovery.  It wants to take discovery before the parties' Rule 26(f) conference, before the Rule 16 conference scheduled by the Court, and before IBM has a chance to move to dismiss.  GF admits it needs this discovery because it does *not* know if it has a claim for preliminary relief, including for a PI.  That typically is grounds for dismissal, not discovery.

Were expedited discovery even justified (which it is not), the expedited discovery GF asks the Court to order is the very opposite of "targeted" and "narrowly tailored."  (GF Br. 2).  GF's blunderbuss requests would be objectionably overbroad even if GF's claims survived dismissal and proceeded to full blown merits discovery.  The seemingly modest *number* of discovery requests cannot disguise the vast *scope* of the requests, including an extensive and invasive forensic analysis of virtually all IBM databases.  The requested documents and information would require IBM to produce virtually every document it has ever shared or discussed with Rapidus relating to multiple generations of semiconductor technology.  And all of this document discovery is supposed to be completed in 21 days.

Among the most egregious examples, GF's Request for Production No. 2 asks for:

> All Documents, inventions, know-how, materials, information, and items that IBM disclosed, licensed, intends to disclose or license (or with respect to which IBM otherwise granted or is obligated to grant any covenant, right, or benefit) to Rapidus relating to semiconductor manufacturing process technology for 10nm and subsequent generations.

11

(Declaration of Blake R. Davis ("GF Decl."), ECF No. 21, Ex. B).  It is hard to conceive of drafting a document request any broader - - *e.g.*, it spans at least five generations of semiconductor chips (10nm, 7nm, 5nm, 3nm, 2nm, and beyond).  But GF's Request for Production No. 3 is even more extreme.  It wants IBM to produce an *entire copy* of *each and every* "device that receives, retains, or allows storage of Documents, know-how, inventions, information and items, including databases, folders, shared drives, computers, cloud storage, or any similar technology," if such "device" includes *any* piece of "documentation, inventions, know-how, materials, information and items relating to semiconductor manufacturing process technology for 10nm and subsequent generations" that was (or was intended to become) accessible to any individual who "worked at or in consultation with either IBM or Rapidus on activity concerning the IBM-Rapidus Partnership" - - whether or not any such IBM employee in fact accessed such "device" or such "documentation."  (*Id.*)

Complying with the request would require IBM not only to image every phone, laptop, desktop, tablet, thumb drive, and every other storage device possessed by any IBM employee who at any time had any connection to the IBM-Rapidus partnership, but also to produce an *entire copy* of every IBM database, folder system, shared drive, or other storage system to which such employees had access.

GF could not establish a basis for obtaining such massive discovery at any stage in this litigation - - and certainly has not made a sufficient showing to get such discovery on an expedited basis outside the regular rules of procedure.

**ARGUMENT**

**GF'S MOTION FOR EXPEDITED DISCOVERY SHOULD BE DENIED**

When determining whether to grant expedited discovery, courts in this District "apply a flexible standard of reasonableness and good cause." *SingularDTV GMBH* v. *LeBeau*, 2022 WL 1082557, at *1 (S.D.N.Y. Apr. 6, 2022) (cleaned up).  "Four factors govern this inquiry:  (1) irreparable injury, (2) some probability of success on the merits, (3) some connection between the expedited discovery and the avoidance of the irreparable injury, and (4) some evidence that the injury [that] will result without expedited discovery looms greater than the injury that the defendant will suffer if the expedited relief is granted." *Id.* (cleaned up).

The Court need not find against the movant on each factor in order to deny the motion for expedited discovery; one factor alone in the non-movant's favor can be sufficient.  *See, e.g.*, *Citigroup Inc.* v. *AT&T Inc.*, 2016 WL 8794472, at *1–2 (S.D.N.Y. July 1, 2016) (denying plaintiff's motion for expedited discovery and holding that "[i]n this case, the Court finds that this fourth factor cuts in favor of defendants' position, and that it does so sufficiently to decide this motion").

In regard to irreparable injury - - a critical factor for expedited discovery - - it is well-established that a "plaintiff's delay in seeking a TRO after being put on notice of the alleged harm is 'compelling evidence' that there is no irreparable harm" and is, on its own, a basis for denying expedited discovery.  *Shenzen Chengront Tech. Co., Ltd*. v. *Besign Direct*, 2022 WL 17741496, at *1 (S.D.N.Y. Dec. 9, 2022) (citation omitted) (expedited discovery denied after movant's 10-month delay); *see also Andersen Consulting LLP* v. *Am. Mgmt. Sys., Inc*., 1995 WL 510042, at *4 (S.D.N.Y. Aug. 28, 1995) (denying motion for expedited discovery in trade secrets case, because plaintiff's one-year "[u]nreasonable delay in bringing suit is strong evidence that immediate injunctive relief is not required to prevent irreparable harm").

Under these standards, GF's motion should be denied.

**A.      GF Cannot Establish Irreparable Injury**

1.      GF's Claim of Irreparable Harm Is Contradicted by Its Unreasonably Long Delay in Sitting on Its Hands for More Than Two Years

GF's motion fails on the critical issue of irreparable harm because, as discussed above, GF has known about the alleged misappropriation of its purported trade secrets for more than two years and did not take legal action until two weeks ago.  GF's argument, that there is something new about IBM's purported use of GF's alleged trade secrets in the April 25, 2023 Rapidus news release, is contrived.  It is belied by (i) comparing that news release to IBM's announcement about Rapidus more than four months earlier (in December 2022) and, indeed, to IBM's news announcement about its partnership with Intel more than two years earlier (in March 2021); (ii) GF's own allegation that the December 2022 announcement about Rapidus "mirror[ed]" the March 2021 announcement about Intel (*see* Complaint ¶ 35), which means that the press releases - - from March 2021, December 2022, and April 2023 - - all involve IBM allegedly sharing similar technology growing out of IBM's research at the Albany Nanotech center that GF claims it owns; and (iii) GF's own allegation that its Dispute Notice from October 2021 covers its claims about Rapidus as well as its claims about Intel  (*see id*. ¶ 139; *see also supra*, pp. 8–9).

GF's delay in seeking any expedited injunctive relief with respect to its claims is alone sufficient to deny its motion for expedited discovery, as ample authority in this Court shows.  In *Shenzen Chengront*, for example, a plaintiff shared information regarding its invention with defendants, and then became aware that defendants allegedly were infringing on plaintiff's patent by selling an infringing product on the market.  No. 2022 WL 17741496, at *1.  When the plaintiff waited 10 months to initiate a lawsuit and seek a TRO, the court held that "[g]enerally

speaking, several months' delay in seeking injunctive relief indicates Plaintiff will not be irreparably harmed by further delay in getting injunctive relief," and denied plaintiff's motion for a TRO and denied requests for expedited discovery. *Id.*

Here, GF did not file its complaint until 25 months after IBM's announcement of its Intel partnership that GF alleges put it on notice of its claims; 18 months after GF first sent its Dispute Notice to IBM; over 12 months after GF went silent in response to IBM's answers to that Dispute Notice; and four months after IBM announced its Rapidus partnership. And when GF finally did file a claim, it did not move for injunctive relief.

As the court did in *Shenzen Chengront*, New York courts routinely reject belated requests for expedited relief or expedited discovery in such contexts. *See, e.g.*, *Andersen Consulting*, 1995 WL 510042, at *4 (denying motion for expedited discovery in trade secrets case, because plaintiff's one-year "[u]nreasonable delay in bringing suit is strong evidence that immediate injunctive relief is not required to prevent irreparable harm"); *Gidatex, S.r.L.* v. *Campiniello Imps., Ltd.*, 13 F. Supp. 2d 417, 420 (S.D.N.Y. 1998) (denying injunctive relief and expedited discovery because plaintiff's two-year "substantial, unexcused delay in seeking injunctive relief" after being on notice of its claim "vitiate[s] its claim" of "threaten[ed] . . . irreparable injury").

GF's two-year delay compares to delays of 10 months in *Shenzen Chengront*, one year in *Andersen Consulting*, and two years in *Gidatex* - - each of which resulted in the denial of a motion for expedited discovery.

In the cases GF cites, where motions for expedited discovery were granted, the plaintiffs moved expeditiously for both injunctive relief and expedited discovery shortly after discovering their claims. In *Helio Logistics* v. *Mehta*, for example, the plaintiffs filed litigation *within two months* of learning about the alleged misappropriation. 2023 WL 1517687, at *1, 3 (S.D.N.Y.

Feb. 3, 2023); *see* No. 22-cv-10047-NSR-JCM, ECF No. 1 (S.D.N.Y. Nov. 25, 2022) (complaint

alleging Plaintiff discovered Defendants' misappropriation in or around October 2022).

Moreover, the court granted expedited discovery in aid of a PI hearing only *after* the plaintiff

successfully applied for a TRO - - something GF here has not done and does not have the basis

to do. *Id.* at *1.  Similarly, in the out-of-Circuit authority GF points to from the Northern District

of California, Judge Alsup granted a motion for expedited discovery in *Waymo* v. *Uber*

*Technologies* when the movant already had sought a PI prior to seeking expedited discovery.

No. 17-cv-00939, ECF Nos. 24 & 26 (N.D. Cal. Mar. 10, 2017).  The plaintiff there filed its

litigation within three months of discovering evidence of its claims, and just two weeks after

receiving evidence confirming its suspicions of misappropriation.  *Id.* at ECF No. 2 ¶¶ 58, 60–

61.  Neither *Helio Logistics* nor *Waymo* stands for the proposition that a party alleging trade

secret misappropriation, but that has not sought a PI and has no basis for a PI, is nonetheless

entitled to expedited discovery *in order to determine* whether it has a basis to do so.  And in

neither case did the plaintiff's conduct so decisively demonstrate the lack of irreparable harm

> 2.      Irreparable Harm Is Not "Presumed" on GF's Claims

GF argues that irreparable harm is "presumed" where a trade secret has been

misappropriated, and that this risk "routinely" warrants expedited discovery.  (GF Br. 7.)  That is

not the law for claims of the type that GF has asserted here, and GF's authority is outdated and

off-point.

GF cites *Estee Lauder Companies Inc*. v. *Batra*, 430 F. Supp. 2d 158 (S.D.N.Y. 2006),

for the proposition that there is a "presumption" of irreparable harm under New York law.  In

*Estee Lauder*, an employer sued its former executive to prevent him from violating a written

noncompetition agreement by taking a similar job with a direct competitor.  *Id.* at 160–61.  The

employer quickly moved for a PI to maintain the status quo *before* the executive commenced his

proposed competitive employment; and *demonstrated a likelihood of success* that, absent an injunction, the executive likely would use or disclose the company's trade secrets. *Id.* at 174. The court determined that irreparable harm was presumed *only after* the movant-employer had established its likelihood of success on misappropriation *and* demonstrated a likelihood that it would be irreparably harmed by the likely inevitable disclosure of trade secrets. *Id.* at 174–77.

What happened in *Estee Lauder* is exactly what GF did not do here.  GF learned in March 2021 of IBM's alleged "unlawful plot" to disclose trade secrets as part of IBM's Intel partnership, but GF sought no expedited injunctive relief or expedited discovery with respect to that relationship.  It would be as if the former employer in *Estee Lauder* took no action against its former executive until two years after his departure.  GF has not acted with dispatch, but with a knowing disregard.

In the context of this case, courts have ruled that irreparable harm is *not* presumed for breach of contract and DTSA claims.  In *Wealth Mgmt. Assocs. LLC* v. *Farrad*, for example, the Court stated that with respect to a DTSA claim and breach of contract claims on which a plaintiff sought a PI, applicable law from the Second Circuit requires that "'[C]ourts must not simply presume irreparable harm . . . .  Rather, plaintiffs must show that, on the facts of their case, the failure to issue an injunction would actually cause irreparable harm.'"  2019 WL 5725044, at *7–8 (S.D.N.Y. June 21, 2019), *report and rec. adopted*, 2019 WL 6497424 (S.D.N.Y. Dec. 3, 2019) (quoting *Salinger* v. *Colting*, 607 F.3d 68, 77–78 (2d Cir. 2010)) and citing *First W. Capital Mgmt. Co.* v. *Malamed*, 874 F.3d 1136, 1143 (10th Cir. 2017) for the proposition that irreparable harm is not presumed under DTSA)).

GF cites *Sun Distributing Company* v. *Corbett*, 2018 WL 4951966 (S.D. Cal. Oct. 12, 2018), an out-of-Circuit case concerning claims under the California Uniform Trade Secrets Act,

as well as DTSA and breach of contract claims.  *Sun Distributing* did not involve an expedited

discovery motion.  There, the plaintiff promptly moved for a TRO and PI *less than two weeks*

after learning of the alleged misappropriation.  *Id*. at *1 (referring to September 12, 2018

"inadvertent email" that gave rise to plaintiff's September 25, 2018 complaint and TRO).  The

court held that the plaintiff sufficiently established a likelihood of success on its claim for

misappropriation with evidence that the defendant had used the plaintiffs' customer and pricing

information, and had "established it will lose customers and goodwill through Defendant's

actions, which shows there is a likelihood of irreparable injury if Defendant is not enjoined."  *Id*.

at *5, *7.

 Here, by contrast, GF did not act quickly upon discovering its claims - - whether in 2021

or 2022.  GF has not moved for a PI, and has not demonstrated a likelihood of success on its

claims or a likelihood of irreparable harm.  Even if Ninth Circuit law applied, courts there too

decline to presume irreparable harm in misappropriation claims under DTSA and contract.  *See,*

*e.g.*, *ExamWorks* v. *Todd Baldini*, 2020 WL 3127928, *11 & n.8 (E.D. Cal. June 11, 2020),

*vacated in part on other grounds*, 835 Fed. App'x 251 (9th Cir. 2020) ("[T]his court has joined

those district courts who decline to rely on a presumption in determining irreparable harm.").

 GF also cites *Next Communications, Inc*. v. *Viber Media, Inc*., 2016 WL 1275659, at *3-

5 (S.D.N.Y March 30, 2016), as "recognizing that in trade secret misappropriation cases,

'without discovery, it is to be expected that Plaintiffs would have limited knowledge of the

extent to which Defendant has used their trade secrets.'"  (GF Br. 5.)  However, this was a ruling

on a motion to dismiss, not a motion for expedited discovery.  2016 WL 1275659, at *1.  It did

not grant the plaintiff urgent discovery, but rather held only that well-founded allegations about

defendant's use of plaintiff's trade secrets were sufficient to survive dismissal pre-discovery.  *Id.* at *5.

GF's only other case is from nearly 30 years ago and predates the above authorities.  In *Advanced Portfolio Technologies, Inc.* v. *Advanced Portfolio Technologies Ltd.*, 1994 WL 719696, at *4 (S.D.N.Y. Dec. 28, 1994), the court held that the plaintiff, the licensor of a computerized stock portfolio risk management system, "sufficiently support[ed] the requested expedited discovery" by producing evidence showing that the defendant licensee had developed a technology "of very recent vintage [that] was developed remarkably rapidly for such a complex system," which suggested the defendant had misused plaintiff's confidential or proprietary information.  *Id.*  Plaintiff had not delayed in seeking expedited discovery, but instead sought leave to amend its complaint and obtain expedited discovery shortly after learning of its claims. *Id*. at *3-4.

GF argues that IBM's partnership with Rapidus poses a "heightened threat" to GF's rights "because it involves a foreign corporation potentially beyond the reach of the U.S. legal system."  (GF Br. 5.)  That is a stretch, to say the least.  First, GF is suing and seeking expedited discovery from IBM, a U.S. corporation, not Rapidus.  Second, the multi-corporation semiconductor consortium that Rapidus is involved in was created with the support of some of Japan's most prominent and global corporations, including Sony and Toyota, which have extensive U.S. operations.  This is a far cry from the facts in the case GF relies on, *Ayyash* v. *Bank Al-Madina et.al.*, 233 F.R.D. 325, 327 (S.D.N.Y. 2005), in which there was a risk that an obscure Lebanese bank that had swindled an American plaintiff was going to remove its assets from the United States to avoid collection on a judgment against it.

### B.    GF Has Not Shown Any Probability of Success on the Merits

GF's motion also fails because GF has not shown any probability of success on the merits and, indeed, does not even purport to make such a showing.  Rather, GF says it is seeking discovery to find out *whether* it has any basis or need for seeking injunctive relief - - thus admitting that GF does not even know, and certainly cannot show, whether it has a probability of success.  This is not like the cases GF cites, in which plaintiffs sought to expedite discovery *after* moving for a PI and *after* demonstrating a likelihood of success.  *See, e.g.*, *Ayyash*, 233 F.R.D. at 327 ("Plaintiff has made a strong evidentiary showing of the substantiality of his claims"); *Helio Logistics*, 2023 WL 1517687, at *4 ("Plaintiff has demonstrated that it is likely to succeed on its claim for misappropriation of trade secrets for purposes of its application for a [TRO]"); *Waymo*, No. 17-cv-00939, ECF Nos. 24, 26 (N.D. Cal Mar. 10, 2017) (motion for PI filed prior to motion to expedite discovery); *Delphine Software* v. *Electronic Arts*, 1999 WL 627413, at *1 (S.D.N.Y. Aug. 18, 1999) (motion for TRO and motion for expedited discovery filed concurrently).

### C.    GF's Proposed Expedited Discovery Is Not Connected to the Avoidance of Irreparable Injury

GF's motion also should be denied because its proposed expedited discovery requests are not reasonably tailored to target specifically the alleged harm GF claims.  Instead, GF seeks, among other things, entire copies of *every* IBM device, database, storage system, and employee phone and computer that contains *any* document having *anything* to do with IBM's work with Rapidus (*see* GF Decl., Ex. B), and *every piece* of documentation or information that IBM ever shared with or made accessible to Rapidus concerning semiconductor technology development (*id.*).  Such overbroad requests show that GF does not have specific trade secrets in mind that it believes are at risk of misappropriation, but instead GF is hoping to get access to *all* of IBM's files regarding Rapidus.  GF is fishing for a claim.

This fails the requirement that GF's proposed discovery be connected to the alleged irreparable harm it seeks to avoid (which, as explained in Section I.A above, GF cannot identify anyway), and for that reason alone GF's motion should be denied.  *See, e.g.*, *Doe 1* v. *Congregation of the Sacred Hearts of Jesus & Mary*, 2022 WL 2901403, at *2–3 (S.D.N.Y. July 22, 2022) (denying plaintiffs' request for a single expedited deposition as "unreasonable, unduly burdensome, and overly prejudicial to Defendant").  And, as established above, GF cannot credibly argue that it faces irreparable harm given its long and leisurely delay in taking any legal action.  (*See supra*, pp. 14–19.)

### D.   GF's Proposed Expedited Discovery Will Prejudice IBM

In weighing the relative burdens on a motion to expedite discovery, "[c]ourts will also compare the potential prejudice which will be suffered by the defendant if discovery is permitted, and that which will be experienced by the plaintiff if denied the opportunity for discovery at this stage."  *Doe 1*, 2022 WL 2901403, at *1 (cleaned up).  Contrary to what GF suggests, its overbroad demands for expedited discovery will prejudice IBM.

The ordinary and orderly rules governing discovery exist for a reason.  They allow discovery to proceed in a considered and mutual fashion.  Requiring IBM, based on nothing more than GF's unsubstantiated suppositions, to engage in the costly, burdensome, and one-sided endeavor of responding to GF's wildly overbroad requests would be prejudicial.  *See Citigroup*, 2016 WL 8794472, at *1–2 (denying motion for expedited discovery and noting that "increasing the litigation burden" on the defendant "during a period in which important documents and individuals may be difficult to locate" weighs in favor of denial).  That is especially so given that GF, which admittedly does not know if it has grounds to seek a PI, wants to obtain highly confidential documents concerning some of IBM's most advanced and confidential innovations - - all involving GF's competitors.  Insisting on such vast and competitively sensitive

21

information in a hurry invites the type of discovery mishaps that often occur in such rushed productions.  It also would prejudice IBM's ability to take its own discovery in an orderly manner - - *if* this case even proceeds past the motion to dismiss stage.  *See, e.g.*, *Doe 1*, 2022 WL 2901403, at *2–3 (denying plaintiffs' request for a single expedited deposition as "unreasonable, unduly burdensome, and overly prejudicial to Defendant"); *Renaissance Nutrition, Inc.* v. *Jarrett*, 2009 WL 1475902, at *2 (W.D.N.Y. May 27, 2009) (denying plaintiff's motion to expedite discovery and holding that "expediting discovery in this action could prejudice defendants' ability to obtain complete discovery with respect to the claims asserted in this action"); *Jones* v. *United States Postal Service*, 2020 WL 5525748, at *1 (S.D.N.Y. Sept. 15, 2020) (finding burden to producing party outweighed burden to moving party, "especially … where that injury [of not obtaining expedited discovery] is speculative").

Given all the time GF has let pass since learning of IBM's alleged "plot," it is fair to infer that GF has tried to generate press attention and brought this "emergency" motion for a public audience and in an attempt to have some kind of *in terrorem* effect on IBM and its partners. Having to deal with that type of public relations static is prejudice enough to warrant denying this motion.  All that aside, the cases cited by GF as demonstrating that GF's scope of discovery is "at least as narrowly tailored as expedited discovery routinely granted by federal courts," (GF Br. 8) actually prove the opposite.  Those cases only underscore that GF's requests are unduly burdensome and not sufficiently connected to GF's purported need for the discovery.  *See supra*, pp. 11–12.  For example, GF states that in *Waymo* v. *Uber Technologies*, plaintiffs were granted six document requests per deponent.  But the court there directed that these requests "must be very narrowly drawn."  No. 17-cv-00939, ECF No. 61, at ¶ 2 (N.D. Cal. Mar. 16, 2017).  The *Waymo* court required that defendants produce for inspection a limited set of files that three

employees had downloaded and taken with them after leaving the plaintiff's payroll, *see id.* at ¶ 4, not entire copies of defendants' databases and all devices of countless of their employees.

GF argues that in *OMG Fidelity* v. *Sirius*, 239 F.R.D. 300 (N.D.N.Y. 2006), the court granted expedited discovery for five interrogatories and five document requests.  GF Br. 8.  However, the judge in *OMG Fidelity* specifically noted that she had reviewed the proposed interrogatories and document demands and, with one exception, found them to be "exceedingly pointed" and "conclude[d] that the burden of responding to them would not be particularly onerous."  *Id.* at 305 & n.6.  The one exception to that finding aptly describes the excessively broad scope of GF's requests:  it was a document request seeking production of "all contacts with Komag [a customer of OMG]," which the judge found to be "patently expansive, and potentially implicates hundreds if not thousands of records and documents covering the spectrum of the relationship between the two companies."  *Id.*; *see also SingularDTV, GmbH* v. *Doe*, 2022 WL 16852213, at \*4–5 (S.D.N.Y. Oct. 26, 2022) (rejecting motion to expedite where plaintiff "broadly requests [all] requests documents, records, or information" that the plaintiff provided to a third party and "all communications between" the two).

GF's argument that prejudice to IBM is mitigated because IBM will inevitably have to produce the material anyway (GF Br. 8) is not grounds for granting this motion.  As shown above, GF's discovery requests would be objectionable and subject to motion practice even if served as part of ordinary discovery.  There is nothing "inevitable" about discovery in this case.  The case GF cites, *United States* v. *Erie County*, 2010 WL 11578742 (W.D.N.Y. March 6, 2010), bears no resemblance to this one.  That case was about the federal government's urgent concern that incarcerated individuals were committing suicide.  *Id.* at \*4.  GF's long-delayed commercial dispute is not a matter of life and death.  The court in *Erie County* granted the DOJ's

request for expedited discovery only *after* holding that the DOJ sufficiently stated claims under the Civil Rights of Institutionalized Persons Act and *after* denying defendant's motion to dismiss.  *Id*. at *2.  Only then did the court grant "narrowly tailored and reasonable" expedited discovery to address "the recent and continuing incidents of suicide and attempted suicide" at the jail defendants operated.  *Id*. at *4.

IBM will be moving to dismiss.  GF's Complaint fails to satisfy the basic pleading requirements for stating a viable misappropriation claim, assuming the case even is permitted to proceed in light of the overlapping state court action.  Having waited more than two years before filing suit and seeking discovery, GF is in no position to argue that discovery should come before the legal sufficiency of GF's claims is tested - - especially when GF admits that it does not know whether it has a basis for a PI.  Thus, jumping the gun with expedited, one-sided, intrusive and overreaching discovery would prejudice IBM when, ultimately, there may be no discovery at all.

**CONCLUSION**

For the foregoing reasons, GF's motion for expedited discovery should be denied.

Dated: May 8, 2023
New York, New York

Respectfully submitted,

PAUL, WEISS, RIFKIND, WHARTON
 & GARRISON LLP

By: _ /s/ Robert A. Atkins_
    Robert A. Atkins
    Catherine Nyarady
    Pietro J. Signoracci
1285 Avenue of the Americas
New York, NY 10019
(212) 373-3000
ratkins@paulweiss.com
cnyarady@paulweiss.com
psignoracci@paulweiss.com

*Counsel for International Business Machines
Corporation*