**Jason C. Hegt**
Direct Dial: +1.212.906.1686
Jason.Hegt@lw.com

1271 Avenue of the Americas
New York, New York 10020-1401
Tel: +1.212.906.1200  Fax: +1.212.751.4864
www.lw.com

# LATHAM&WATKINS LLP

October 10, 2023

**VIA ECF**

Hon. Andrew E. Krause, U.S.M.J.
United States District Court for the Southern District of New York
300 Quarropas Street
White Plains, NY 10601-4146

      Re:    *GlobalFoundries U.S., Inc. v. International Business Machines Corp.*,
              Case No. 7:23-cv-3348-KMK-AEK

Dear Judge Krause:

      We write on behalf of Plaintiff GlobalFoundries U.S., Inc. ("GF") pursuant to the Court's order during the October 6, 2023 status conference. Although the parties agreed several weeks ago on a protective order to govern this matter, Defendant International Business Machines ("IBM") announced for the first time one week ago that it wanted to make substantial changes to the agreed draft in order to accommodate unspecified concerns from certain third-parties. Although IBM has repeatedly refused GF's request to see the communications with these third-parties to determine whether their concerns could be addressed, GF has nonetheless agreed to substantial modifications to the previously agreed protective order to address these still-unseen concerns.[1]

      As it stands now, the parties are unable to reach agreement on two provisions: (1) the addition of a fourth-level of confidentiality reserved for Outside Counsel's Eyes Only ("OCEO"); and (2) the scope of IBM's proposed "Prosecution Bar." As outlined below, GF believes these provisions substantially and unnecessarily restrict the ability of its internal counsel to remain informed about the case, provide direction to outside counsel, and even attend hearings in this matter. IBM has not met its burden for imposing these restrictions, and GF asks that the Court enter its proposed protective order, attached hereto as Exhibit A. Of course, if any non-party has specific concerns about particular documents and wishes for additional provisions to be included, they can identify those additional provisions and show good cause why incremental restrictions should be added to the protective order. However, the protective order attached as Exhibit A contains the baseline provisions that the Court should enter so that the parties can begin the substantial work of document production in this matter.

## I. BACKGROUND

      Pursuant to the Court's direction at the August 29, 2023 conference, GF proposed a draft

---

[1] These changes are reflected in Exhibit B, which is a redline comparing GF's proposed order to the parties' originally agreed-upon order. Exhibit C is a redline comparing GF's proposed order to IBM's proposed order—in other words, Exhibit C identifies the two open issues.

LATHAM&WATKINS LLP

protective order based on the Court's template and incorporating provisions from the protective order in the parties' state court action. After exchanging and discussing several mark-ups, GF received on September 19, 2023 what it believed to be IBM's final edits to the parties' draft protective order. But when GF sought to file the order with the Court, IBM informed GF that it had received unspecified comments from non-party Intel Corporation. On October 3, 2023, IBM sent GF revisions substantially altering the parties' previously agreed-upon terms and deviating significantly from the parties' protective order in the state court action. GF accepted the majority of IBM's revisions, but sought more information as to why good cause existed for (1) IBM's proposal that the OCEO designation—previously reserved for non-parties—also be available to the parties (particularly in light of substantial restrictions IBM added for which in-house counsel can review documents), and (2) whether IBM would be willing to reasonably tailor its "Prosecution Bar" to be limited to patents regarding 7nm and smaller technology. IBM did not provide any.

## II.     ARGUMENT

The party seeking a protective order under Rule 26 of the Federal Rules of Civil Procedure has the burden of showing that good cause exists for issuance of that order. *Schiller v. City of New York*, 2007 WL 136149, at *2 (S.D.N.Y. Jan. 19, 2007). Demonstrating good cause requires demonstrating that "disclosure will result in a clearly defined, specific and serious injury." *Rensselaer Polytechnic Inst. v. Amazon.com, Inc.*, 2020 WL 13180211, at *7 (N.D.N.Y. Oct. 28, 2020) (citation omitted). The harm must be "significant," and "[b]road allegations of harm, unsubstantiated by specific examples or articulated reasoning," do not suffice. *Id.* (citation omitted). Here, IBM has failed to provide good cause as to: (1) why it needs an OCEO designation or (2) why a Prosecution Bar for 7nm and smaller semiconductor technology is insufficient.

### A.     **<u>Addition Of "Highly Confidential – Outside Counsel's Eyes Only" Designation</u>**

GF objects to IBM's proposal for an OCEO designation for two reasons.[2] **First**, the protective order already contains a three-tiered confidentiality structure for use by the parties (Confidential, Highly Confidential, and Highly Confidential – AEO), which is the same confidentiality structure that is in the state court protective order, except here GF has agreed to additional provisions for the AEO designation. Those new provisions include a requirement that in-house counsel be prohibited from engaging in "competitive decision making," and a patent prosecution bar for in-house and outside counsel for one year following the conclusion of this action. Given these new restrictions, GF repeatedly asked IBM to explain either the need for the additional layer of protection or which categories of information it expects would fall under the OCEO designation that would not also fall under the AEO designation. In response, IBM simply asserted that the parties would make "reasonable decisions on a case-by-case basis about the specific materials warranting each such designation." That is insufficient as a matter of law. If IBM is seeking additional protections, then it must provide specific examples of the harm it faces without these designations. *RPI*, 2020 WL 13180211, at *7. Moreover, the proposed definitions for both AEO and OCEO materials are largely the same and do not create meaningful, distinct

---

[2] GF does not object to non-parties utilizing an OCEO designation, where appropriate, for information that IBM does not have—but IBM is a party to this case, its conduct in entering agreements and sharing protected information are central issues, and GF must have the opportunity to evaluate this evidence, including with its in-house counsel.

categories of confidential information. On the one hand, AEO is defined as "private, sensitive, competitive or proprietary" information, and on the other hand, OCEO is defined as "highly confidential, proprietary" information. Given the lack of clear definitions as to qualifying information and IBM's failure to explain the need for each category of confidentiality, IBM has not met its burden of showing good cause as to why it requires the additional layer of protection.[3]

**Second**, even if IBM had good cause for the OCEO designation, GF's agreement to restrict in-house counsel from being involved in competitive decision-making and to a one-year prosecution bar resolves the issue. Courts in this district generally only adopt OCEO designations where in-house counsel is involved in a party's competitive decision-making. *See Infosint S.A. v. H. Lundbeck A.S.*, 2007 WL 1467784, at *3 (S.D.N.Y. May 16, 2007) (citing *U.S. Steel Corp. v. United States*, 730 F.2d 1465, 1468 (Fed. Cir. 1984) ("[w]hether a protective order should bar access by one party's attorney depends on the potential for 'inadvertent or accidental disclosure'")). Access to information may not be denied solely because of an attorney's status as in-house counsel. *See U.S. Steel Corp.*, 730 F.2d at 1469; *see also Infosint*, 2007 WL 1467784 at *5-6 (rejecting restriction for in-house attorneys because "there is no precedent that general corporate legal advice constitutes involvement in competitive decision making . . . which is arguably the determinative factor in this analysis") (citations omitted). In other words, here, where GF has accepted IBM's restrictions on in-house counsel, the issue has already been resolved in IBM's favor.

**B.     Scope of Prosecution Bar**

IBM added a prosecution bar prohibiting any in-house and outside counsel from "drafting, prosecuting, or supervising or providing advice regarding the drafting or prosecution, of any patent applications" related to 14nm or subsequent, smaller generations of semiconductor technology for one-year following resolution of this action. GF agreed to IBM's prosecution bar, but requests that the Court enter GF's proposal limiting the bar to patent applications involving "7nm or subsequent, smaller generations of semiconductor technology." GF's proposal is necessary to protect its ability to effectively litigate this case. If IBM's proposed language is adopted, GF's in-house counsel, who is responsible for managing and providing direction to counsel in this matter, would be prohibited from receiving any materials designated AEO, would only be able to review portions of filings, and would even need to come-and-go during court hearings. GF's proposal provides IBM protection for its most advanced and sensitive technology (i.e.*,* 7nm and smaller), without displacing GF's right to participate in its own case. *See Mirror Worlds Techs., LLC v. Facebook, Inc.*, 2017 WL 5969334, at *1 (S.D.N.Y. Nov. 20, 2017) (discussing that courts are required to balance the risk of inadvertent disclosure against "the potential harm to the opposing party from restrictions imposed on that party's right to have the benefit of counsel of its choice") (citations omitted); *see also In re Deutsche Bank Tr. Co. Americas*, 605 F.3d 1373, 1379 (Fed. Cir. 2010) (restrictions on counsel access to be "decided based on the specific facts involved therein").

GF respectfully requests that the Court enter the protective order attached as Exhibit A.

---

[3] In fact, during the parties' discussions, IBM's counsel already suggested that if their proposed restrictions on in-house counsel were not agreed to by GF, it would result in more documents being marked OCEO by IBM.

LATHAM&WATKINS LLP

                                        Respectfully submitted,

                                        /s/ Jason C. Hegt

                                        Jason C. Hegt
                                        of LATHAM & WATKINS LLP

cc: All counsel of record (via ECF).